UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
MARTIN HODGE,                    :

        Plaintiff,    :    <u>REPORT & RECOMMENDATION</u>
                     and
                  :    <u>MEMORANDUM & ORDER</u>

    -against-         :    06 Civ. 2480 (PAC)(MHD)

DR. JOHN PERILLI, Sing Sing :
Correctional Facility, and DR.
LESTER WRIGHT, Chief Medical :
Officer of the NYS DOCS,

                  :
        Defendants.
------------------------------x

TO THE HONORABLE PAUL A. CROTTY, U.S.D.J.:


    <u>Pro se</u> plaintiff Martin Hodge is a long-term inmate in the New

York State correctional system. He was previously housed at the

Sing Sing Correctional Facility, in Ossining. He commenced this

section 1983 lawsuit against the then-Facility Health Services

Director at Sing Sing, Dr. John Perilli, and against Dr. Lester

Wright, the Chief Medical Officer of the New York State Department

of Corrections ("DOCS" or "Department"). He alleges that he was

denied necessary medical treatment for a back ailment, and that

this refusal to provide needed assistance -- principally in the

form of a double or second mattress -- violated his rights under

the Eighth Amendment. For relief he seeks damages and an injunction

requiring proper treatment.


Prior Proceedings


Plaintiff commenced this lawsuit in 2006, asserting claims under the Eighth Amendment for denial of medical care and a claim under the First and Fourteenth Amendments for an alleged retaliatory transfer to a different prison facility. On a Rule 12(b)(6) motion by defendant Wright the court sua sponte dismissed the retaliation claim against both defendants without prejudice to plaintiff repleading the claim, but declined to dismiss the Eighth Amendment claim against defendant Wright. (Report and Recommendation dated June 22, 2007, 27-30; Order dated July 25, 2007).


Plaintiff subsequently made several motions to amend his complaint, seeking to add historical detail to his allegations and to include new defendants and additional claims. These requests were largely denied, although plaintiff was permitted in one instance to add certain factual allegations pertaining to his claims against defendants Perilli and Wright and in another instance to increase his damage demand and include a request for injunctive relief seeking treatment for his ailments that he

2

described in his complaint. (See Hodge v. Perilli, 2008 WL 141093, *3-5 (S.D.N.Y. Jan. 7, 2008); Endorsed Order dated Oct. 2, 2008; Endorsed Order dated Nov. 7, 2008; Endorsed Order dated Nov. 17, 2008; Memorandum and Order dated Dec. 30, 2008, 7-9).

Plaintiff also moved for a preliminary injunction to prevent defendants from transferring him to a different facility and to compel defendants to provide him with specified treatment modalities. The court denied the injunction motion because plaintiff demonstrated neither a risk of irreparable harm nor a likelihood of success on the merits of either of his injunctive claims. (Report and Recommendation dated Oct. 22, 2007).

With discovery completed, defendants have now moved for summary judgment. Plaintiff opposes, asserting that there are triable disputes as to the pertinent facts.[1] Relatedly, he contends

---

[1] Plaintiff also requests that we deny defendants' motion as "time barred" because he asserts that it was filed after the deadline set by the court. (Apr. 4, 2009 Letter to the Court from Martin Hodge, 1; May 19, 2009 Letter to the Court from Martin Hodge, 1). We note that we granted defendants a brief extension of the March 16, 2009 deadline for filing their motion, and that they complied with the revised March 29, 2009 deadline by filing their motion on March 26, 2009. (See Endorsed Order dated Mar. 10, 2009; May 15, 2009 Letter to the Court from Inna Reznik, Esq., 1). Contrary to plaintiff's contention, it appears that he was sent a copy of defendants' request for an extension and our order granting the request. (See May 19, 2009 Letter from Mr.

that defendants have failed to turn over all relevant documents that he had requested, and we interpret him to request as a remedy additional discovery pursuant to Rule 56(f) as well as sanctions in the form of a dismissal of certain affirmative defenses that defendants have raised. He further seeks to compel the production of certain medical records that he alleges defendants have improperly withheld. For the reasons that follow, we recommend that defendants' motion be granted and that plaintiff's requests for additional discovery, sanctions and an order compelling the production of certain documents be denied.


ANALYSIS


I. Defendants' Summary-Judgment Motion


We first summarize the criteria by which motions for summary judgment are to be addressed and then assess defendants' motion.

---

Hodge, at 1; Endorsed Order dated Mar. 10, 2009). Even if defendants' motion had been slightly tardy, we likely would have exercised our discretion to consider the late filing. See, e.g., Fed. R. Civ. Proc. 6(b)(1)(B); Calvert v. State of New York, 2009 WL 3078864, *7 (W.D.N.Y. Sept. 24, 2009); Reville v. Niagara Frontier Transp. Auth., 2009 WL 5167645, *11 (W.D.N.Y. Dec. 20, 2009). Therefore, we do not recommend denying defendants' motion on this basis.

A. <u>Summary Judgment Criteria</u>

_____The court may enter summary judgment only if it concludes that there is no genuine dispute as to the material facts and that, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>see</u>, <u>e.g.</u>, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Feingold v. New York</u>, 366 F.3d 138, 148 (2d Cir. 2004). "An issue of fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law [while] [a]n issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Shade v. Hous. Auth. of the City of New Haven</u>, 251 F.3d 307, 314 (2d Cir. 2001) (quoting <u>Anderson v. Liberty Lobby, Inc.</u> 477 U.S. 242, 248 (1986)). It is axiomatic that the responsibility of the court in deciding a summary-judgment motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." <u>Knight v. U.S. Fire Ins. Co.</u>, 804 F.2d 9, 11 (2d Cir. 1986); <u>see</u>, <u>e.g.</u>, <u>Ricci v. DeStefano</u>, 129 S. Ct. 2658, 2677 (2009); <u>Anderson</u>, 477 U.S. at 255; <u>Howley v. Town of Stratford</u>, 217 F.3d 141, 150-51 (2d Cir. 2000).

The party moving for summary judgment bears the initial burden of informing the court of the basis for his motion and identifying those portions of the "pleadings, the discovery and disclosure materials on file, and any affidavits" that demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); see, e.g., Celotex, 477 U.S. at 323; Koch v. Town of Brattleboro, 287 F.3d 162, 165 (2d Cir. 2002). If the non-moving party has the burden of proof on a specific issue, the movant may satisfy his initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim. See, e.g., Celotex, 477 U.S. at 322-23, 325; PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002); Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995). If the movant fails to meet his initial burden, however, the motion will fail even if the opponent does not submit any evidentiary materials to establish a genuine factual issue for trial. See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970); Giannullo v. City of New York, 322 F.3d 139, 140-41 (2d Cir. 2003).

If the moving party carries his initial burden, the opposing party must then shoulder the burden of demonstrating a genuine issue of material fact. See, e.g., Beard v. Banks, 548 U.S. 521, 529 (2006); Celotex, 477 U.S. at 323-24; Santos v. Murdock, 243

6

F.3d 681, 683 (2d Cir. 2001). In doing so, the opposing party cannot rest "merely on allegations or denials" of the factual assertions of the movant, Fed. R. Civ. P. 56(e); see, e.g., Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti, 374 F.3d 56, 59-60 (2d Cir. 2004), nor can he rely on his pleadings or on merely conclusory factual allegations. See, e.g., Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). He must also "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Woodman v. WWOR-TV, Inc., 411 F.3d 69, 75 (2d Cir. 2005). Rather, he must present specific evidence in support of his contention that there is a genuine dispute as to the material facts. See, e.g., Celotex, 477 U.S. at 324; Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 526 (2d Cir. 1994).


   B. Assessment of the Motion


        Plaintiff has pressed two sets of claims in this case. His first complaint is that defendants Perilli and Wright denied him proper medical treatment for a painful and chronic back condition by denying him access to a second mattress, even though both Doctor Perilli and previous prison treating physicians had earlier

authorized such a second mattress. Plaintiff has also at various times sought to assert a claim that his November 2003 transfer from Sing Sing to a different facility was in retaliation for his complaints about his lack of medical treatment, although this claim was previously dismissed and Hodge's efforts to resuscitate it have been denied.

Since defendants target both sets of claims on the current motion, we address both in the order in which the parties discuss them, including an analysis of whether plaintiff's retaliation claim is currently at issue in the case. We then turn to the propriety of awarding plaintiff relief under Fed. R. Civ. P. 56(f).

1. The Mattress Claim

Plaintiff has asserted an Eighth Amendment claim based on defendants' refusal to provide him with a second mattress to alleviate pain caused by his back condition.[2] Defendants contend

_____

[2] To the extent that plaintiff's opposition to defendants' motion relies on purported factual disputes regarding other aspects of the medical care that plaintiff received -- such as defendants' asserted failure to arrange for plaintiff's return visit to an orthopedic surgeon -- we note that we denied plaintiff's request to amend his complaint to add such claims, and therefore even if factual disputes about such issues exist, they do not provide a basis for denying defendants' motion. (See

that plaintiff cannot satisfy the standards for establishing a constitutional violation, and we agree.

_____To establish a constitutional claim for denial of rights based on the quality of medical care provided by the defendant, an inmate plaintiff must demonstrate "'deliberate indifference to [his] serious medical needs.'" Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This two-part test embodies both an objective and a subjective component. The physical condition of the plaintiff must be sufficiently serious and the failure to render proper care must result from "a sufficiently culpable state of mind." Id. at 66 (citing, inter alia, Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Accord Smith v. Carpenter, 316 F.3d 178, 183-84 (2d Cir. 2003).

An official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Farmer v. Brennan, 511 U.S. 825,

---

Pl.'s Opp'n to Summ. J., ¶ 12; Pl.'s Mem. of Law in Opp'n to Summ. J., 15, 22; Memorandum and Order dated Dec. 30, 2008, 4-8).

837 (1994). Disagreement with a course of treatment chosen by a medical provider does not suffice to demonstrate such indifference. Indeed, even negligence tantamount to medical malpractice does not amount to an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998). Nonetheless, an act of malpractice will amount to deliberate indifference if "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996) (quoting Farmer, 511 U.S. at 839). Accord Farid v. Ellen, 593 F.3d 233, 248 (2d Cir. 2010) (citing Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006)); Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003).

Defendants admit that plaintiff suffers from "Chronic Degenerative Disc Disease," which they characterize as a "recurring, nonfatal disease related to lifestyle and to certain occupations" involving physical labor that primarily causes pain or discomfort, with "occasional periods of exacerbation or flare-ups." (Decl. of John Perilli, M.D. in Supp. of Defs.' Mot. for Summ. J., executed Mar. 23, 2009, ¶ 7). We assume that plaintiff sufficiently demonstrates the existence of a serious medical condition, see generally Morales v. Mackalm, 278 F.3d 126, 133 (2d Cir. 2002),

10

abrogated on other grounds by Porter v. Nussle, 534 U.S. 516
(2002), but the record reflects that he has been given regular
treatment for his back pain. This record is entirely antithetical
to a showing of deliberate indifference by the defendants.

At the outset, we detail plaintiff's attempts to procure a
second mattress to alleviate his back pain. Plaintiff initially
injured his back while in DOCS custody in 1987. Beginning in 1992,
he was issued medical permits permitting him to use two state-
issued mattresses to relieve his back pain and help him sleep. (Am.
Compl. dated Oct. 17, 2008, ¶ 2(D)(1); Decl. of Mr. Martin Hodge in
Supp. of Compl., executed Apr. 4, 2009, Ex. L at fourth and fifth
pages).[3]  In June 1999 Hodge was transferred from Attica
Correctional Facility to Sing Sing, and requested a medical pass
from his new facility for the use of a second mattress. (Hodge
Decl. at ¶ 5 & Ex. L at DEF 366). In September 1999 Hodge was

---

[3] A medical pass is issued by the facility Medical Director
to an inmate "with documented health problems" who requires an
exemption from certain facility regulations, including to inmates
who wish to obtain second mattresses. (Perilli Decl. at ¶ 16;
Decl. of Inna Reznik, Esq. in Supp. of Defs.' Mot. for Summ. J.
("Reznik Summ. J. Decl."), executed Mar. 25, 2009, Ex. E). Passes
are not issued "solely on request" or "on the basis of previous
issue by a prior facility." (Reznik Summ. J. Decl., Ex. E at IV
(B)). A medical pass can be issued on a short-term basis, up to
one month, or on a long-term basis, up to three months, but
reevaluation is necessary for the renewal of a pass. (Id., Ex. E
at IV(D)).

issued a two-month medical pass entitling him to use an extra
mattress, and that pass was renewed for an additional two months in
November 1999. (Hodge Decl., Ex. M).[4]

Doctor Perilli assumed the position of Facility Health
Services Director at Sing Sing in December 1999, and in February
2000 he renewed Hodge's medical pass permitting him to have a
second mattress for an additional three months, although this
action was purportedly taken before Doctor Perilli had "had the
opportunity to comprehensively review inmate Hodge's medical
records . . . and gain[] familiarity with the policies and
procedures at Sing Sing". (Hodge Decl. at ¶ 6 & Ex. M; Perilli
Decl. at ¶ 12). In May 2000 Hodge's permit was renewed for an
additional three months, but when he requested an extension of the
permit in July 2000 his request was denied by Doctor Perilli.
(Hodge Decl. at ¶ 9 & Ex. P; Perilli Decl. at ¶ 10). This denial
was based on Doctor Perilli's understanding that recommending the
use of a second mattress for patients suffering from plaintiff's

_____

[4] Plaintiff's medical passes also permitted him to wear
pants with belt loops to address an allergy to the elastic in the
waistband of the standard pants issued to inmates and allowed him
to wear orthopedic boots to address his back condition. (Hodge
Decl., Ex. M). Doctor Perilli denied plaintiff's request for
renewal of these medical passes as well, but these denials are
not at issue in this case and therefore we do not discuss them
further. (Perilli Decl. at ¶¶ 13, 34, 52).

condition "is not consistent with recognized standards of medical practice in this country" and his twenty-four years of medical experience in which he had never encountered a second mattress having been prescribed to treat plaintiff's condition. (Perilli Decl. at ¶¶ 8-10).

Plaintiff filed grievances, complained to medical staff and wrote letters to defendants Perilli and Wright and then-DOCS Commissioner Goord, challenging the denial of his request for a second mattress, but to no avail. (Hodge Decl. at ¶¶ 12-23). As a result, in May 2001 Hodge commenced an Article 78 proceeding in New York State Supreme Court, seeking, among other relief, an order requiring defendants to issue plaintiff a medical permit for two mattresses. (Hodge Decl., Ex. XX at p. 11).[5] In a November 29, 2001 decision, the Hon. Joseph K. West (S.C.J.) found defendants' denial of plaintiff's request for the renewal of his medical pass to be "arbitrary and capricious to the point of being irrational" and ordered them to "provide [Hodge] with his second mattress." (Reznik Summ. J. Decl., Ex. I at 5). However, the order noted that Hodge had not challenged the duration of the medical passes or the

---

[5] In addition to the defendants in the current matter, plaintiff named then-Commissioner Goord as a respondent in his Article 78 proceeding.

procedure for renewing them, and therefore defendants "may certainly deny [Hodge's renewal] application in the future", provided such denial is "on the basis of a rational explanation reconciling such denial against past approval" (Id.).

Having yet to receive his second mattress in response to this order, plaintiff filed a grievance on December 14, 2001. (Reznik Summ. J. Decl., Ex. J). That grievance was denied on December 31, 2001 on the basis of a pending appeal of Justice West's November 29, 2001 decision, although the notice of appeal was not filed until January 23, 2002. (Reznik Summ. J. Decl., Exs. J & L). The appeal was subsequently withdrawn in July 2002. (Id., Ex. M).

On September 12, 2002, Hodge, having yet to receive his second mattress, wrote to Justice West, seeking an order holding defendants in contempt for failing to comply with the judge's November 2001 order. (Hodge Decl. at ¶ 36; Reznik Summ. J. Decl., Ex. N). A few weeks later, on September 23, Doctor Perilli wrote in Hodge's medical record that Hodge would be issued a medical pass permitting him to have a second mattress for 30 days in response to Justice West's order. He noted his view that the pass was "not issued for a medical reason but for legal ones" and that he would reevaluate Hodge in 30 days. (Hodge Decl., Ex. NN at DEF 880). The

14

next day, Doctor Perilli received a memo from Brian Fischer, the
superintendent of Sing Sing, indicating that the Department's
counsel's office had instructed the facility to issue Hodge a
medical pass permitting him to use two mattresses. The memo also
stated, however, that Doctor Perilli should reevaluate the case in
thirty days, and if he determined that Hodge's use of two
mattresses was not medically necessary at that time, he should
rescind the medical pass and direct that the additional mattress be
removed. (Reznik Summ. J. Decl., Ex. P). Hodge was issued a thirty-
day pass permitting him to have two mattresses on September 24,
2002. (Hodge Decl., Ex. NN at second page).

On October 25, 2002 plaintiff sought to renew his pass
allowing him to have an extra mattress, but Doctor Perilli denied
this request because, in his view, the use of an extra mattress is
not an accepted treatment for plaintiff's condition and prescribing
the use of two mattresses would be inconsistent with plaintiff's
daily activities, which include mowing lawns. (Hodge Decl., Ex. PP
at DEF 877). In response, plaintiff again sought an order from
Justice West holding defendants in contempt. (Reznik Summ. J.
Decl., Ex. S). In an April 27, 2003 decision the judge declined to
grant plaintiff's request for a contempt order, but he noted that
defendants had delayed complying with his November 2001 order

15

until September 2002. (Id., Ex. U at 2). He also observed that Doctor Perilli had diagnosed plaintiff with a herniated disc and chronic low back pain, the same conditions that other doctors had relied on in granting plaintiff the use of a second mattress, but that Doctor Perilli had not explained why he differed from those doctors in believing that this diagnosis did not warrant the use of an additional mattress. (Id., Ex. U at 2-3). Justice West therefore directed respondents to "issue [Hodge] his permit pending substantial and objective medical proof that [his] condition no longer requires the requested [accommodation]." (Id., Ex. U at 3).

    As of September 17, 2003 plaintiff had yet to receive his second mattress in response to Justice West's order, and he filed a grievance to obtain his medical pass. (Id., Ex. V at 1-2). The superintendent of Sing Sing responded to the grievance by claiming that Hodge had been provided with a double mattress, but upon Hodge's objection that he in fact had not received a second mattress, following a September 30, 2003 hearing the Inmate Grievance Resolution Committee stated that Hodge was going to be provided a second mattress. (Id., Ex. V at 3-4). Likewise, Doctor Perilli sent Hodge a memo on October 20, 2003 acknowledging receipt of Justice West's order and promising to provide "a comprehensive and rational Medical Treatment Plan" to address his medical needs,

16

including the issuance of medical passes for three-month periods. (<u>Id.</u>, Ex. W). However, plaintiff contends that he was not issued a pass for a double mattress prior to his transfer from Sing Sing in November 2003.[6] (Hodge Decl. at ¶ 47. <u>See also</u> Am. Compl. dated Oct. 17, 2008, at p. 3-B ¶ 20).[7]

Throughout this period, plaintiff was frequently examined by

---

[6] Defendants assert that plaintiff was provided a second mattress for thirty days in response to Justice West's April 27, 2003 order. (Mem. of Law in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Summ. J. Mem."), 16). However, they cite no evidence that supports this proposition. Rather, the evidence that they cite establishes merely that Doctor Perilli stated in plaintiff's medical record and in a letter to plaintiff that a pass allowing him to use a second mattress would be issued.

[7] Although plaintiff's claims only extend until his transfer from Sing Sing in November 2003, for the sake of completeness we note that he wrote a letter to Commissioner Goord on December 8, 2003 complaining about defendants' failure to comply with Justice West's order. (Reznik Summ. J. Decl., Ex. A at 53-59). That letter was forwarded to defendant Wright, who replied that he had been informed by the staff of Hodge's current facility -- which, following Hodge's transfer, was Upstate Correctional Facility -- that "there is no medical basis for any of your current complaints" and that he did "not require two mattresses", but that if he had a "real medical problem" he should use the sick call process to address it. (Hodge Decl., Ex. TT at 1856). Doctor Wright again denied that Hodge needed a second mattress in a January 2, 2004 letter, although a contradictory Central Office Review Committee decision on plaintiff's September 2003 grievance was issued five days later stating that "arrangements have been made to provide [Hodge] a second mattress" at his new facility. (Hodge Decl., Ex. TT at 1853; Reznik Summ. J. Decl., Ex. V at 5). There is no indication in the record as to whether Hodge was ever provided with a second mattress.

17

the medical staff at Sing Sing, including at least five examinations that were performed by Doctor Perilli. (See Attachment to Feb. 5, 2010 Letter to the Court from Mr. Hodge; Perilli Decl. at ¶¶ 24, 27-28, 37, 45). One of Doctor Perilli's examinations was performed while Hodge was in the infirmary for an acute flare-up of his back pain, and the doctor issued him a pass allowing him to stay on the first floor of the facility to avoid going up and down stairs and permitting him to remain in his cell on bed rest, which Doctor Perilli describes as "an approved therapy for an acute back pain flare up." (Perilli Decl. at ¶¶ 45-46). During another of Doctor Perilli's examinations he ordered that x-rays be taken of plaintiff's back. Those x-ray results triggered plaintiff's referral for physical therapy, a treatment that he reported to have been helpful in alleviating his back pain in the past. (Hodge Decl., Ex. KK). During plaintiff's physical therapy visits, he received instructions about stretches, exercises and bed positions that could be used to alleviate his back pain. (Id., Ex. DDD at DEF 172-83).

The fact that plaintiff was regularly examined and treated for his back condition by the medical staff at Sing Sing, including by defendant Perilli, belies any claim of deliberate indifference to his medical needs. Although defendants denied plaintiff's request

for one type of treatment, in the form of a second mattress, this does not establish a violation of plaintiff's constitutional rights. See, e.g., Shire v. Greiner, 2007 WL 840472, *2 (S.D.N.Y. Mar. 15, 2007) (citing Chance, 143 F.3d at 703).

   In this regard, we note that defendants offer the testimony of Doctor Perilli that the use of multiple mattresses is not a recognized treatment for plaintiff's back condition, an assertion that plaintiff does not contradict with any competent evidence. (Perilli Decl. at ¶¶ 8-9). The fact that other prison physicians prescribed plaintiff such treatment does not establish that Doctor Perilli's contrary view constituted deliberate indifference, as courts have routinely held that "a difference of opinion . . . among medical professionals . . . as to the appropriate course of medical treatment does not in and of itself amount to deliberate indifference." Williams v. M.C.C. Inst., 1999 WL 179604, *7 (S.D.N.Y. Mar. 21, 1999) (citing Ross v. Kelly, 784 F. Supp. 35, 45-46 (W.D.N.Y.), aff'd, 970 F.2d 896 (2d Cir. 2002)). Accord Cole v. Goord, 2009 WL 1181295, *6-9 (S.D.N.Y. Apr. 30, 2009) (prison doctor's disagreement with outside specialist about inmate's course of treatment, including the inmate's need for surgery and proper medication, does not establish deliberate indifference); Woods v. Goord, 2002 WL 31296325, *5 (S.D.N.Y. Oct. 10, 2002) ("An Eighth

19

Amendment claim for deliberate indifference cannot be based on a difference of opinion between doctors."). In any event, even if a double mattress were found to be a possible treatment modality, plaintiff must show not only that he was denied such treatment, but that the denial reflected deliberate indifference. Given the array of other, more generally accepted forms of treatment that defendants and other prison medical staff provided Hodge, a trier of fact could not justifiably find the required indifference.

Moreover, the fact that defendants failed to comply in a timely manner with state-court rulings requiring them to provide plaintiff with a second mattress does not establish that they were deliberately indifferent to his medical needs.[8] The stated basis for the state court's initial order requiring defendants to permit plaintiff to use an additional mattress was defendants' failure to

---

[8] We agree with defendants that plaintiff has not stated any Fourteenth Amendment claims targeting defendants' noncompliance with the state-court orders, and therefore we do not address defendants' entitlement to summary judgment on such a claim. (See Defs.' Summ. J. Mem. at 15-18). Although in his opposition to defendants' motion plaintiff suggests that he could raise such a Fourteenth Amendment claim, he fails to describe the substance of such a claim, and we note that any such claim raised for the first time in plaintiff's opposition papers would be untimely. (See Pl.'s Opp'n to Summ. J. at ¶ 14; McCloud v. Cutler, 2008 WL 906701, *3 n.4 (E.D.N.Y. Apr. 3, 2008) (citing Cal Distrib., Inc. v. Cadbury Schweppes Americas Beverages, Inc., 2007 WL 54534,*6 (S.D.N.Y. Jan. 5, 2007)).

reconcile prior allowances of such an accommodation with their denial of plaintiff's request for renewal of the privilege. The court considered defendants to have violated their obligation under New York state law to "explain and reconcile conflicting decisions rendered on essentially identical facts." (Reznik Summ. J. Decl., Ex. I at 4 (citing cases)). The court's second order was premised on similar grounds. (<u>Id.</u>, Ex. U at 3). However, these administrative-law critiques of defendants' rationales for denying plaintiff's requests for a medical pass have no bearing on whether such denials represented deliberate indifference to plaintiff's medical needs. Moreover, any delay in complying with the state-court orders critiquing defendants' "arbitrary and capricious" denials of plaintiff's requests for a medical pass at best reflects defendants' contempt of the court, an argument that plaintiff pressed -- albeit unsuccessfully -- in state court. (<u>Id.</u>, Ex. I at 5, Ex. S, Ex. U).

In short, based on the undisputed record facts, a rational fact-finder could not find that defendants were deliberately indifferent to plaintiff's medical needs. Therefore, we recommend that defendants be granted summary judgment dismissing plaintiff's Eighth Amendment claim.

2. <u>The Retaliation Claim</u>

At the outset, we address the status of plaintiff's claim that his transfer from Sing Sing in November 2003 was in retaliation for his complaints about his denial of medical care and violated his constitutional rights. Although defendants seem to assume that the claim is still in the case, we conclude that we have in fact dismissed it and that it has not been properly repled.

Reading plaintiff's original complaint liberally, we may infer that he alleged that in November 2003 he had been transferred from Sing Sing Correctional Facility on the basis of false disciplinary charges, assertedly in retaliation for having complained about defendants' failure to provide him proper medical care. (Reznik Summ. J. Decl., Ex. A at pp. 3-B, 5 & Ex. J). In our June 22, 2007 Report and Recommendation on defendant Wright's dismissal motion, adopted on July 25, 2007, we <u>sua</u> <u>sponte</u> recommended that plaintiff's retaliation claim be dismissed against both defendants. (June 22, 2007 Report & Recommendation at 27-30; Order dated July 25, 2007). This recommendation was based primarily on the fact that plaintiff's allegation of retaliation did not involve either of the defendants in the case. However, at our suggestion the claim was dismissed without prejudice to plaintiff repleading the claim

22

within thirty days of dismissal. (June 22, 2007 Report & Recommendation at 30; July 25, 2007 Order at 2).

Plaintiff chose not to replead his retaliation claim within the allotted time frame, but instead filed a motion to amend his complaint on September 28, 2007. (See Order dated Oct. 1, 2007). His proposed amended complaint, dated September 21, 2007, sought to include additional factual allegations about the purported retaliation, and also to add two defendants who plaintiff contended were involved in retaliating against him. (Reznik Summ. J. Decl., Ex. B). We denied plaintiff's request to add new defendants and new claims in a January 7, 2008 Memorandum and Order, in part on the ground that plaintiff's retaliation claim was time-barred and did not satisfy the applicable pleading requirements. Hodge, 2008 WL 141093, at *3-5.

Following plaintiff's repeated attempts to add Doctor Wladyslaw Sidorowicz -- another prison doctor -- as an additional defendant in connection with his Eighth Amendment claims (see Endorsed Order dated Oct. 2, 2008; Endorsed Order dated Nov. 7, 2008; Endorsed Order dated Nov. 17, 2008),[9] we ordered plaintiff to

---

[9] Earlier this year, plaintiff filed a separate lawsuit to bring claims against Dr. Sidorowicz, Dr. Wright and others.

23

submit a proposed amended complaint reflecting additional factual allegations that plaintiff sought to make regarding defendant Perilli. (Endorsed Order dated Nov. 19, 2008). In response, plaintiff submitted a proposed amended complaint dated October 17, 2008. (November 25, 2008 Letter to the Court from Martin Hodge).[10] We denied plaintiff's request to amend his complaint to add additional factual allegations regarding defendant Perilli because these allegations were untimely and would prejudice defendants. (Memorandum and Order dated Dec. 30, 2008 at 7-8). However, we permitted plaintiff's amendment to increase his damage demand and to seek injunctive relief requiring the provision of certain medical treatment. (Id. at 9).

The history of plaintiff's efforts to amend his complaint following our dismissal of his retaliation claim demonstrates that

_____

Defendants' motion to dismiss that suit is currently pending. (See Docket, Hodge v. Sidorowicz, 10 Civ. 428 (S.D.N.Y. 2010).

[10] We note that although defendants included plaintiff's original complaint and his proposed amended complaint dated September 21, 2007 as exhibits in support of their summary-judgment motion, they did not include his proposed amended pleading dated October 17, 2008. (See Reznik Summ. J. Decl., Exs. A & B). It is unclear whether this omission was intentional, or whether defendants understand plaintiff's September 2007 pleading to be the currently operative one, which could explain their apparent belief that plaintiff's retaliation claim remains viable.

24

this claim is no longer in the case.[11] Nevertheless, even if we viewed the matter otherwise, we would agree with defendants that it is beyond triable dispute that if plaintiff's retaliation claim were at issue in the case, it would fail as a matter of law. Therefore, to the extent that the claim might conceivably be extant, we recommend that defendants be granted summary judgment on it.

To establish a First Amendment claim for retaliation, a plaintiff must prove "'(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) (quoting Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002)). Accord Williams v. Temple, 349 F. App'x 594, 596 (2d Cir. 2009). Even if a plaintiff establishes that the defendant had a retaliatory motive, the defendant is entitled to summary judgment if he "can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." Scott, 344 F.3d at 287-88 (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

---

[11] We note that plaintiff takes the same view regarding the status of this claim. (See Pl.'s Opp'n to Summ. J., at ¶ 13).

In plaintiff's September 21, 2007 proposed amended complaint he alleged that he was falsely charged with disciplinary violations for using a cellular phone in September 2003, and that those charges were relied on by Messrs. William Connolly and Brian Fischer -- whom he sought to add as defendants -- as a basis for transferring him from Sing Sing Correctional Facility. (Reznik Summ. J. Decl., Ex. B at p. 3-C).[12] Plaintiff alleged that his transfer was actually in retaliation for his legal actions against defendant Perilli. (Id., Ex. B at p. 3-C). However, we denied plaintiff's request to add a retaliation claim against Connolly and Fisher. See Hodge, 2008 WL 141093, at *3-4, 6. The only current defendants are Doctors Perilli and Wright, and plaintiff does not allege any retaliatory action by either of them. Absent proof that a defendant took adverse action against him, plaintiff cannot succeed on his retaliation claim. See Scott, 344 F.3d at 287.[13]

---

[12] Plaintiff does not include these allegations in his amended complaint dated October 17, 2008, which is his currently operative pleading. That pleading does, however, request "the removal of the false charges on [plaintiff's] disciplinary record that [were] used to transfer" him. (Nov. 25, 2008 Letter from Mr. Hodge, attachment at p. 5). Nevertheless, as defendants have addressed plaintiff's more comprehensive retaliation claim in his earlier proposed amended pleading, we do as well.

[13] If plaintiff's retaliation claim were interpreted as a Fourteenth Amendment due-process claim, it would also plainly fail as a matter of law, as inmates have no Fourteenth Amendment liberty interest in remaining at a particular facility, and therefore a "transfer between New York prisons does not deny a liberty interest no matter what 'part an inmate's behavior may

Thus, to the extent that plaintiff's retaliation claim might be deemed to remain in the case, we recommend that defendants be granted summary judgment dismissing it.[14]

### 3. Rule 56(f) Relief

During the course of briefing the current motion, we received several letters from plaintiff regarding the sufficiency of defendants' discovery responses. We interpret those letters as requests for relief under Fed. R. Civ. P. 56(f). That rule provides that "[i]f a party opposing [a summary-judgment] motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable . . . discovery to be undertaken; or (3) issue any other just order." Fed. R. Civ. P. 56(f).[15]

---

play in a decision to transfer.'" Sher v. Coughlin, 739 F.2d 77, 80 (2d Cir. 1984) (quoting Montanye v. Haymes, 427 U.S. 236, 243 (1976)). Accord Velez v. Kulhmann, 2003 WL 22004899, *4 (S.D.N.Y. Aug. 22, 2003).

[14] Because we have recommended granting defendants summary judgment dismissing plaintiff's deliberate-indifference and retaliation claims on other grounds, we need not address defendants' entitlement to qualified immunity on these claims. (See Defs.' Summ. J. Mem. at 21-24).

[15] We note that plaintiff has not submitted an affidavit seeking relief under Rule 56(f), and that "the failure to file an

The Second Circuit employs a four-part test in evaluating submissions for Rule 56(f) relief. Any such request "must include the nature of the uncompleted discovery; how the facts sought are reasonably expected to create a genuine issue of material fact; what efforts the [party] has made to obtain those facts; and why those efforts were unsuccessful." Paddington Partners, 34 F.3d at 1138 (citing Hudson River Sloop Clearwater, Inc. v. Dep't of Navy, 891 F.2d 414, 422 (2d Cir. 1989); Burlington Coat Factory Warehouse Corp. v. Esprit De Corp, 769 F.2d 919, 925 (2d Cir. 1985)). Accord Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 303 (2d Cir. 2003) (citing Gurary v. Winehouse, 190 F.3d 37, 43 (2d Cir. 1999)). Although the third and fourth factors are somewhat less influential, given that "'failure to comply [with these factors] is not automatically fatal' to the request" for Rule 56(f) relief,

---

affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994) (stating that request for Rule 56(f) relief in memorandum of law in opposition to summary judgment is inadequate substitute for required affidavit). Accord Di Benedetto v. Pan Am World Serv., Inc., 359 F.3d 627, 630 (2d Cir. 2004); Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stroh Cos., 265 F.3d 97, 117 (2d Cir. 2001). However, we excuse the pro se plaintiff's failure to file the required affidavit in this case, and instead interpret his letters to the court regarding defendants' purported discovery omissions -- at least one of which requested denial of defendants' summary-judgment motion as a remedy -- to raise a request for Rule 56(f) relief. (See Feb. 5, 2010 Letter from Mr. Hodge, at 3). Accord Owusu v. New York State Ins., 655 F. Supp. 2d 308, 330 (S.D.N.Y. Aug. 14, 2009).

they are nonetheless important to ensure that the non-movant's own delay is not the basis for his request for additional discovery. Bey v. I.B.E.W. Local Union No. 3, 2008 WL 821862, *27 (S.D.N.Y. Mar. 26, 2008) (quoting Paddington Partners, 34 F.3d at 1139, and citing Am. Home Assurance Co. v. Zim Jamaica, 418 F. Supp. 2d 537, 548 (S.D.N.Y 2006)). We apply these considerations to each of plaintiff's discovery-related complaints in turn.

First, plaintiff alleges that defendants neglected to produce during discovery a September 24, 2002 memorandum from Brian Fischer, the superintendent of Sing Sing, to defendant Perilli instructing him -- on the advice of the Department's counsel's office -- to grant plaintiff a pass for an additional mattress, but to reevaluate the case in thirty days and remove the mattress if it is not medically required. (Apr. 4, 2009 Letter from Mr. Hodge, at 1; Jan. 18, 2010 Letter to the Court from Mr. Hodge, 1). Despite this failing, defendants included the memo as an exhibit to their summary-judgment papers. (Reznik Summ. J. Decl., Ex. P). Defendants describe their failure to produce this document during the discovery period as an "inadvertent oversight" and suggest that they have produced all similar documents that are responsive to plaintiff's discovery requests. (See May 15, 2009 Letter from Ms. Reznik, at 1-2). As plaintiff had access to this memo and, we are

told, all similar documents in defendants' possession when he was opposing defendants' summary-judgment motion, he cannot rely on defendants' withholding of this document to establish a reasonable expectation that additional discovery will reveal facts material to the current motion. Therefore, defendants' failure to produce this memo during the discovery period does not establish that plaintiff is entitled to Rule 56(f) relief. <u>See</u> <u>Sage Realty Corp. v. Ins. Co. of N. Am.,</u> 34 F.3d 124, 128 (2d Cir. 1994) (denying request for Rule 56(f) relief in part because information in documents requested was publicly available and therefore additional discovery would not have revealed new material facts).[16]

Plaintiff also alleges that defendants have failed to produce a memo that he claims that Dr. Wright sent to Dr. Sidorowicz in August or September 2007, stating that plaintiff's second mattress should be removed. (Apr. 4, 2009 Letter from Mr. Hodge, at 1). However, defendants report that they have searched for such a memo, but have been unable to locate it. (May 15, 2009 Letter from Ms. Reznik, at 2). Moreover, we note that even if defendants had submitted such a document in opposition to defendants' motion, it

---

[16] We also interpret plaintiff's discovery-related complaints as requests for sanctions for the defendants' belated production of certain documents and a motion to compel the production of certain documents below. <u>See</u> <u>infra</u>, pp. 34-47.

would not have been material to our decision, as plaintiff's currently operative complaint only alleges claims about his medical treatment until his November 2003 transfer from Sing Sing, and there is other evidence in the record that establishes that Dr. Wright opposed plaintiff's use of a second mattress. (<u>See</u>, <u>e.g.</u>, Hodge Decl., Ex. TT at 1853, 1856). Thus, the omission of this memo from defendants' production does not trigger an award of Rule 56(f) relief. <u>See</u> <u>Slacks v. Grenier</u>, 2004 WL 1948749, *3 n.4 (S.D.N.Y. Sept. 2, 2004) (denying Rule 56(f) relief where moving party denied that requested record exists and record would not be material to decision).

Finally, plaintiff claims that defendants have failed to produce certain of his medical records to him. These include a dental record indicating that he had chipped his tooth and computerized reports that include consultation reports, reports indicating the disposition of his requests for medical treatment, and a subject-matter listing of his medical records. (May 19, 2009 Letter from Mr. Hodge, at 3; Jan. 18, 2010 Letter from Mr. Hodge, at 1-2; Feb. 5, 2010 Letter from Mr. Hodge, at 2-3).

Regarding plaintiff's dental records, he acknowledges that he has obtained a copy of the record reflecting his chipped tooth from

a dentist at Sullivan Correctional Facility and he has submitted it as an exhibit to his opposition papers. (May 19, 2009 Letter from Mr. Hodge, at 3; Hodge Decl., Ex. BB at first page). Moreover, defendants previously represented to the court their intention to produce all of plaintiff's dental records to him during the discovery period, and they have apparently acted on that representation. (Defs.' Mem. of Law in Opp'n to Pl.'s Mot. to Compel Disc., 3. See also Mem. & Order dated Oct. 30, 2008, 3). Thus, plaintiff has in fact cited some documents produced by defendants regarding his chipped tooth in his opposition to the current motion. (Hodge Decl. at ¶ 21 (citing DEF 1912, 1920); & Ex. BB at DEF 920). Therefore, plaintiff has not established that allowing him to pursue additional discovery pertaining to his dental records –– which in any event would only bear on plaintiff's damages, not defendants' liability –– would be likely to yield additional material facts pertinent to the current motion.

In terms of the computerized medical records that plaintiff alleges that defendants have failed to produce, plaintiff also fails to demonstrate a likelihood that these records would contain facts material to the current motion. We note that defendants have already provided plaintiff with the relevant Request and Report of Consultation forms, which reflect his physicians' diagnoses of his

ailments and the treatments they provided, many of which he has submitted in opposition to the current motion. (Feb. 1, 2010 Letter to the Court from Inna Reznik, Esq., 1-2; Hodge Decl., Ex. DDD). To the extent that plaintiff complains about defendants' failure to produce documents reflecting the disposition of his requests for medical appointments, he does not establish the relevance of these documents, since he has not asserted a claim about defendants refusing him access to medical appointments. Similarly, he fails to demonstrate the relevance of his request for a subject-matter listing of his medical records, as defendants have already produced the relevant underlying records that would be reflected in such a report. In short, plaintiff has amply documented the nature of his physical ailments and the course of treatment that he has received for them -- facts largely undisputed by defendants -- in his opposition to the current motion. In the absence of a showing that further discovery pertaining to plaintiff's medical records is likely to lead to the discovery of facts material to the current motion, we decline to afford plaintiff Rule 56(f) relief. See Sage Realty Corp., 34 F.3d at 128 (noting that to obtain Rule 56(f) relief, additional discovery sought must be material to opposition of the summary-judgment motion) (citing Hudson River Sloop Clearwater, Inc., 891 F.2d at 422). Accord Am. Home Assurance Co., 418 F. Supp. 2d at 547.

33

II. <u>Plaintiff's Sanctions Request</u>

Plaintiff has requested that the court strike certain of defendants' affirmative defenses as a sanction for their asserted failure to produce documents that he had requested during discovery.[17] Although this request should be moot in light of our recommendation to grant defendants' summary-judgment motion and dismiss the complaint, we also separately recommend that it be denied even if the court were to deny some aspect of defendants' Rule 56 motion.

A district court has broad discretion to issue sanctions for discovery abuses under both Fed. R. Civ. P. 37 and its inherent powers. <u>Residential Funding Corp. v. DeGeorge Fin. Corp.</u>, 306 F.3d 99, 106-07 (2d Cir. 2002); <u>Arista Records LLC v. Usenet.com, Inc.</u>, 633 F. Supp. 2d 124, 138 (S.D.N.Y. 2009). These sanctions are intended both to cure the harm visited on the discovering party and

_____

[17] At one point, plaintiff also requests that we deny defendants' summary-judgment motion as a sanction for defendants' failure to produce all requested discovery materials. (Feb. 5, 2010 Letter from Mr. Hodge, at 3). While we analyze -- and ultimately deny -- plaintiff's sanctions request in terms of his primary demand for preclusive sanctions below, our analysis also serves to explain our rejection of any request for us to deny defendants' current motion as a discovery sanction. Furthermore, to the extent that this application implies a request for relief under Rule 56(f), we have dealt with the issue above.

to deter similar refusals by other litigants to comply with the court's scheduling and discovery directives. See, e.g., Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976) (per curiam); Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 71, 73 (2d Cir. 1988). Among the sanctions that the court may impose is the preclusion of defendants' affirmative defenses. Fed. R. Civ. P. 37(b)(2)(A)(iii) (authorizing court to strike pleading in part as sanction for party's failure to obey a discovery order). See, e.g., Arista Records LLC, 633 F. Supp. 2d at 142; Am. Stock Exch., LLC v. Mopex, Inc., 215 F.R.D. 87, 96 (S.D.N.Y. 2002).

When determining the proper sanction for discovery infractions under either Rule 37(b) or our inherent authority, we must consider "(a) [the] willfulness or bad faith on the part of the noncompliant party; (b) the history, if any, of noncompliance; (c) the effectiveness of lesser sanctions; (d) whether the noncompliant party has been warned about the possibility of sanctions; (e) the client's complicity; and (f) prejudice to the moving party." Arista Records LLC, 633 F. Supp. 2d at 138 (citing DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124, 136 (2d Cir. 1998)). We apply these considerations to each category of discovery misconduct that plaintiff alleges.

First, plaintiff complains about defendants' failure, during the discovery period, to produce the September 24, 2002 memorandum from Superintendent Brian Fischer to Doctor Perilli conveying instructions about how to respond to plaintiff's request for a medical permit. (Apr. 4, 2009 Letter from Mr. Hodge, at 1; Jan. 18, 2010 Letter from Mr. Hodge, at 1). The memorandum conveyed the advice of the Department's counsel's office that Doctor Perilli should issue plaintiff a pass to use a second mattress, but reevaluate the case in thirty days and remove the mattress if it is not medically necessary. (Reznik Summ. J. Decl., Ex. P). As noted, defendants have characterized the failure to produce the document to plaintiff during discovery as an "inadvertent oversight" and observed that plaintiff was not prejudiced by the belated production of the document, as he had access to it when opposing defendants' motion for summary judgment and was already aware of the information that it contained based on other documents that had been produced during discovery. (May 15, 2009 Letter from Ms. Reznik, at 1-2). Plaintiff, in response, alleges that his belated access to this document prevented him from requesting leave to add Superintendent Fischer as a defendant. He further asserts that the memo supports his retaliation claim, presumably implying that if this document had been produced earlier he could have avoided the dismissal of his retaliation claim or successfully repled it. (May

36

19, 2009 Letter from Mr. Hodge, at 2).

Plaintiff has not established that defendants' failure to produce the September 24 memo was willful or in bad faith, and indeed the inclusion of the document in defendants' summary-judgment papers suggests that defendants believed that it already had been produced in discovery. There is also no history of non-compliance by defendants with discovery orders in the case and no evidence that defendants had been warned that future non-compliance with discovery orders would result in sanctions.

Most significantly, plaintiff has not demonstrated any prejudice from defendants' belated production of this document. Plaintiff alleges that if the memo had been produced earlier, he could have used it to support a request to add Mr. Fischer as a defendant on both his Eighth Amendment and his retaliation claims. (May 19, 2009 Letter from Mr. Hodge, at 2). However, there is no reason to believe that plaintiff was ignorant of Mr. Fisher's identity, or his role as superintendent of the facility. See Hodge, 2008 WL 141093, at *4 n.2. Moreover, plaintiff did attempt to add Mr. Fisher as a defendant in September 2007, but his request was denied because any claims pertaining to Mr. Fisher's actions in 2002 or 2003 were time-barred. Id. at *3-4. Even if defendants had

37

produced this memo during the discovery period, there is no basis for inferring that plaintiff would have received it in time to raise a timely claim against Fisher, as any claim relating to Mr. Fisher's actions in 2002 or 2003 would have been time-barred in 2005 or 2006, whereas the discovery period in the case extended until December 30, 2008. (Endorsed Order dated Oct. 1, 2008). <u>See</u>, <u>e.g.</u>, <u>Jaghory v. N.Y. State Dep't of Educ.</u>, 131 F.3d 326, 331-32 (2d Cir. 1997) (noting that the statute of limitations for section 1983 claims is three years).

Plaintiff also suggests that the September 24 memo could have been used to support his retaliation claim because a copy of the memo was sent to a recipient who played a role in plaintiff's transfer from Sing Sing. Plaintiff notes that a copy of the memo was sent to Sing Sing's First Deputy Superintendent Kikendall, who apparently served as the hearing officer for plaintiff's disciplinary charges for his alleged use of a cellular phone, which led to plaintiff's transfer from Sing Sing. (Feb. 5, 2010 Letter from Mr. Hodge, at 2). Plaintiff suggests, in somewhat opaque terms, that Mr. Kikendall's receipt of this memo motivated his subsequent decision to impose allegedly retaliatory discipline on plaintiff. (<u>Id.</u>). However, the fact that Mr. Kikendall received this memo would not have assisted plaintiff in avoiding the initial

38

dismissal of his retaliation claim, as that dismissal was premised on his failure to allege any retaliatory acts by Doctors Perilli and Wright -- the only defendants in the case -- and that failing is completely unrelated to any role that Mr. Kikendall may have played in plaintiff's transfer. (June 22, 2007 Report and Recommendation at 27-29). Moreover, plaintiff does not explain how receipt of the September 24 memo during discovery would have allowed him to successfully replead his retaliation claim. Plaintiff's September 2007 attempt to replead this claim was denied not only because of the claim's implausibility, but also because his attempt to add the defendants responsible for his transfer was untimely. Hodge, 2008 WL 141093, at *3-5. This memo does not make plaintiff's retaliation claim more plausible, as it neither references disciplinary charges against plaintiff nor mentions his possible transfer. Moreover, even if plaintiff had received the memo during the discovery period -- which extended through December 30, 2008 -- it is not apparent that he would have been able to make a timely motion to add the defendants who he alleges were responsible for his retaliatory transfer in November 2003. In sum, there is no basis for sanctioning defendants for the belated production of the September 24 memo.

Plaintiff next complains about defendants' failure to produce

39

what he claims is a memo from August or September 2007 from Dr.
Wright to Dr. Sidorowicz, instructing that plaintiff's double
mattress be removed. (Apr. 4, 2009 Letter from Mr. Hodge, at 1). We
had ordered that defendants produce this memo in response to a
letter from plaintiff seeking additional discovery. (Endorsed Order
dated Jan. 13, 2009). However, defendants have stated that they
have been unable to locate any such memo, despite having searched
in plaintiff's medical records and his guidance counseling file.
(May 15, 2009 Letter from Ms. Reznik, at 2). It appears that
defendants undertook a reasonably diligent search to locate the
document, but were unable to do so. Plainly, their inability to
find the requested memo after a reasonable search does not trigger
sanctions. See Lavi v. City of New York, 2007 WL 1573904, *6
(S.D.N.Y. May 24, 2007).[18] In any event, plaintiff fails to show how
this purported document would salvage his current Eighth Amendment
claim.

     Finally, plaintiff alleges that defendants have improperly

------

[18] Plaintiff claims that he saw a copy of the memo and that
it appeared to have been sent by e-mail, and so defendants should
be required to search Dr. Sidorowicz's "personal files" or his e-
mail communications. (May 19, 2009 Letter from Mr. Hodge, at 3).
We presume that defendants have searched the locations that would
be likely to contain the memorandum as described by plaintiff,
based on their knowledge of their record-keeping practices.

withheld certain of his medical records, including in particular a dental record from March 2001 indicating that his tooth had been chipped. (May 19, 2009 Letter from Mr. Hodge, at 3).[19] Plaintiff has complained that his back pain has interfered with his ability to walk, and that on at least one occasion it caused him to fall and chip his tooth. (Am. Compl. dated Oct. 17, 2008, at p. 3). Mr. Hodge apparently procured a copy of the dental record from a dentist at Sullivan Correctional Facility and has submitted it in opposition to the current motion. (Hodge Decl., Ex. BB at first page).

Plaintiff has not established that defendants' failure to produce this dental treatment record was wilful or in bad faith. We note that, in response to plaintiff's May 22, 2008 motion to compel discovery, defendants reported that they had requested plaintiff's dental records from 1986 through 2008 and would produce them "immediately upon receipt". (Pl.'s Mot. to Compel Disc., 5-6; Defs.' Mem. of Law in Opp'n to Pl.'s Mot. to Compel Disc., 3. See also Mem. & Order dated Oct. 30, 2008, 3). We also note that defendants appear to have produced other documents relating to

---

[19] We interpret plaintiff's related complaint regarding the withholding of certain computerized medical records to be a motion to compel discovery, and address it below.

plaintiff's chipped tooth (Hodge Decl. at ¶ 21 (citing DEF 1912, 1920); & Ex. BB at DEF 920), suggesting that the omission of this specific document was an oversight. As noted above, defendants do not have a history of violating discovery orders in this case. Moreover, plaintiff has neither alleged nor demonstrated any prejudice from defendants' failure to produce this document during discovery, and it appears that he has now satisfied himself that he has access to all of his dental records. (May 19, 2009 Letter from Mr. Hodge, at 3). Additionally, this document appears to relate to plaintiff's damages rather than defendants' liability, and its production would not affect our analysis of the deficiencies in plaintiff's case. Accordingly, defendants' failure to produce the dental treatment record does not warrant the imposition of sanctions.

In sum, given plaintiff's failure to establish that defendants have withheld any documents from production wilfully or in bad faith, or that he was prejudiced by defendants' omissions, we recommend that plaintiff's request to impose preclusive sanctions on defendants be denied.

III. <u>Plaintiff's Motion to Compel</u>

After defendants' summary-judgment motion had been fully briefed, plaintiff sought to compel the production of certain computer-generated records pertaining to his medical history on the Department's Heath Services System. (Jan. 18, 2010 Letter from Mr. Hodge, at 1-2). These documents include "CCP Referral Decision" and "Request and Report of Consultation" reports. (<u>Id.</u> at 1). He also sought to obtain a "Subject Matter Listing" of all of his medical reports maintained on the Health Services System. (<u>Id.</u> at 2). In response, defendants stated that they have produced relevant "Request and Report of Consultation" reports to plaintiff in the course of discovery and noted that plaintiff failed to specify any particular reports that he alleges were improperly withheld. (Feb. 1, 2010 Letter from Ms. Reznik, at 1-2). They also noted that plaintiff has not specified the nature of the "CCP Referral Decision" reports that he seeks, including how they might relate to the defendants and claims at issue in this case. (<u>Id.</u> at 2). Finally, they objected to plaintiff's request for a subject-matter listing of his medical records on the ground that they have already produced all relevant medical records and that granting plaintiff's request would lead to a "fishing expedition" by plaintiff after discovery in the matter has closed and defendants have moved for

43

summary judgment. (Id.). In reply, plaintiff has submitted several pages of records from the Department's Health Services System that purportedly reflect plaintiff's referrals for medical care from November 1999 through May 2004. (Attachment to Feb. 5, 2010 Letter Mr. Hodge). Several entries on these forms have been highlighted, and plaintiff contends that these reflect "78 computer entries made of computerized medical records that exist in seeking the approval of medical care for plaintiff . . . [but which were] never turned over under discovery." (Feb. 5, 2010 Letter from Mr. Hodge, at 2-3).

Initially, we observe that plaintiff's request should be deemed moot in light of our recommendation to grant defendants summary judgment and dismiss the complaint. However, even absent that recommendation, we would deny plaintiff's request for the production of additional medical records. The request was made more than a year after discovery in the case had closed and after defendants' summary-judgment motion had been fully briefed. Moreover, it appears to target records that have either already been produced to plaintiff or that plaintiff fails to establish are relevant to his current claims.

Defendants have previously represented to the court that they

have produced all of plaintiff's medical records from the start of his incarceration in 1986 through mid-2008, and have proffered declarations from two of the Department's nurse administrators attesting to the accuracy and completeness of those records. (Defs.' Mem. in Opp'n to Pl.'s Mot. to Compel Disc., at 1-2; Decl. of Inna Reznik, Esq. in Opp'n to Pl.'s Mot. to Compel Disc., executed June 6, 2008, Ex. B). We note that plaintiff appears to have already received from defendants, during discovery, a number of the Request and Report of Consultation forms for the dates that he has highlighted, and he has submitted them in opposition to the defendants' summary-judgment motion. (See Hodge Decl., Ex. DDD). For instance, plaintiff has highlighted a referral from March 12, 2002 with a visit on August 16, 2002 as an instance of defendants' purported failure to produce requested records. However, we note that plaintiff submitted a Request and Report of Consultation form for that visit, which defendants had produced to him during discovery, as part of his opposition to defendants' current motion. (See Attachment to Feb. 5, 2010 Letter from Mr. Hodge, at seventh page, last line; Hodge Decl., Ex. DDD at DEF 172). This pattern is repeated with several of the other entries. (See Attachment to Feb. 5, 2010 Letter from Mr. Hodge, at fifth page, first line and sixth page, first, third  through sixth, and eighth through eleventh lines; Hodge Decl., Ex. DDD at DEF 173, 175-83). These reports

appear to reflect the medical staff's diagnoses and treatment notes from plaintiff's medical visits, and therefore provide the information regarding his condition that might be relevant to his current claims.

To the extent that plaintiff alleges that there are additional computerized records reflecting the disposition of his requests for medical treatment, he has not established the relevance of those records to the claims at hand, as he has not raised a claim that defendants refused his requests for medical appointments. Furthermore, plaintiff has not demonstrated the relevance of the requested subject-matter listing of plaintiff's medical records, as the underlying records with the information about his condition that would be pertinent to his current claims, which would be catalogued in any such list, have already been produced to plaintiff.

Therefore, we deny plaintiff's request to compel the production of additional computerized medical records as untimely as well as moot in light of our recommendation to grant defendants summary judgment dismissing the complaint and defendants' previous document productions. We also conclude that any aspects of plaintiff's request that are not moot fail to target the production

of records that are relevant to his claims.

CONCLUSION

For the reasons stated, we recommend granting defendants' summary-judgment motion dismissing plaintiff's deliberate-indifference and retaliation claims. We also recommend denying plaintiff's request for sanctions. Further, we deny plaintiff's motion to compel discovery.

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to the Report and Recommendation portion of this submission. See also Fed. R. Civ. P. 6(a), 6(d). Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Paul A. Crotty, Room 735, and to the chambers of the undersigned, Room 1670, U.S. Courthouse, 500 Pearl Street, New York, New York 10007. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Thomas v. Arn, 474 U.S. 140, 150-55

47

(1985), <u>reh'g</u> <u>denied</u>, 474 U.S. 1111 (1986).

Dated: New York, New York
       July 6, 2010

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Report and Recommendation and Memorandum
and Order have been mailed today to:

Mr. Martin Hodge
86-A-8851
Sullivan Correctional Facility
325 Riverside Drive
P.O. Box 116
Fallsburg, New York 12733-0116

Inna Reznik, Esq.
Office of the Attorney General
  of the State of New York
120 Broadway, 24th Floor
New York, NY 10271