USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: September 30, 2010

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

MARTIN HODGE,   :
      :
            Plaintiff,   :
      :        06 Civ. 2480 (PAC) (MHD)
      -against-   :
      :        MEMORANDUM
DR. JOHN PERILLI, Sing Sing Correctional   :        OPINION & ORDER
Facility, and DR. LESTER WRIGHT, Chief   :        ADOPTING REPORT AND
Medical Officer of the NYS DOCS,   :        RECOMMENDATION
      :
            Defendants.   :
      :

------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

Pro se Plaintiff Martin Hodge ("Hodge") is an inmate with a back problem.  His

lawsuit demonstrates what can happen when a pro se incarcerated inmate, with plenty of

time on his hands, decides to litigate his own version of "The Princess and the Pea."

From 1992 through 2000, New York State Department of Corrections ("DOCS")

officials issued Hodge medical permits allowing him to use two state issued mattresses to

alleviate his back pain and help him sleep.  Hodge was satisfied, until he was transferred

to Sing Sing Correctional Facility ("Sing Sing") in 2000.  Dr. John Perilli ("Dr. Perilli"),

Sing Sing's Facility Health Services Director, refused to renew Hodge's permit for a

double mattress.  According to Dr. Perilli, two mattresses is not a medically recognized

treatment for Hodge's condition.

Hodge sees things differently.  He commenced litigation in New York State

Supreme Court concerning the double mattress.  He brings this action under 42 U.S.C. §

1983, claiming that Dr. Perilli and DOCS' Chief Medical Officer, Dr. Lester Wright

("Dr. Wright") (together, "Defendants") were deliberately indifferent to his serious

medical needs in violation of the Eighth Amendment.  As relief, Hodge seeks $850,000 in damages and an injunction requiring Defendants to provide appropriate treatment for his back.

The Court referred the general pretrial matters and dispositive motions in the case to Magistrate Judge Michael Dolinger on April 28, 2006.  On March 23, 2009, after the close of discovery, Defendants moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  Hodge opposes the motion, and also requests additional discovery, sanctions and an order requiring Defendants to turn over certain medical records.  On July 12, 2010, Magistrate Judge Dolinger issued a Report and Recommendation ("R&R") recommending that the Court grant Defendants motion for summary judgment and deny Hodge's barrage of discovery-related requests.  Hodge filed timely objections to the R&R on July 23, 2010.  The Court has reviewed the R&R and Hodge's objections.  For the reasons that follow, the Court adopts Magistrate Judge Dolinger's findings and recommendations.  Defendants' motion for summary judgment is GRANTED.

## Background

### I. Procedural History and Pending Objection

Hodge commenced this action on March 29, 2006.  In his initial complaint, Hodge asserted an Eighth Amendment claim for denial of medical care, and a claim under the First and Fourteenth Amendments for an alleged retaliatory transfer to a different prison facility.  Dr. Wright moved to dismiss the claims against him under Rule 12(b)(6) of the Federal Rules of Civil Procedure on July 11, 2006.  On June 22, 2007, Magistrate Judge Dolinger issued a Report and Recommendation recommending that the

Court deny Dr. Wright's motion to dismiss Hodge's Eighth Amendment claim, but grant the motion as to the retaliation claim.  Since the complaint did not allege that either of the Defendants were involved in the claimed retaliation, or that they acted with retaliatory animus, Magistrate Judge Dolinger also recommended dismissing the retaliation claim against Dr. Perilli sua sponte.  Hodge did not file objections, and the Court adopted Magistrate Judge Dolinger's Report and Recommendation in an order dated July 25, 2007.  The Court's order clearly states that the retaliation claim is dismissed as to both Defendants "without prejudice to amendment within 30 days of this order."  (Order dated July 25, 2007 at 2.)[1]

Hodge did not replead his retaliation claim within thirty days, but instead filed a motion to amend his complaint over two months later on September 28, 2007.  In a proposed amended complaint dated September 21, 2007, Hodge sought to include additional factual allegations concerning the purported retaliation, and to join three new defendants, two of which Hodge claimed were involved in the alleged retaliation.  The proposed amended complaint also included additional allegations relating to Hodge's Eighth Amendment claim against Drs. Perilli and Wright.  In a memorandum and order dated January 7, 2008, Magistrate Judge Dolinger denied the motion to amend to the extent Hodge sought to add new defendants and claims, but granted the motion to the

---

[1] In October, 2007, Hodge moved for a preliminary injunction preventing Defendants from transferring him from Sullivan Correctional Facility ("Sullivan") – where he is currently incarcerated – to another facility, and requiring Defendants to provide him with certain specifically requested medical treatment for his back. In a Report and Recommendation dated October 22, 2007, Magistrate Judge Dolinger recommended denying the motion because Hodge failed to demonstrate a risk of irreparable harm or a likelihood of success on the merits.  (Report and Recommendation dated 10/22/07 at 6-16.)  Hodge did not file objections, and upon review of the Report and Recommendation, the Court finds no clear error.  The Court accordingly accepts and adopts as its opinion the Report and Recommendation dated October 22, 2007. See Wilds v. United Parcel Serv., 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003) ("To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record.")

extent Hodge sought to include additional allegations relating his Eighth Amendment claim.  (Memorandum and Order dated 1/7/2008; 2008 WL 141093 (S.D.N.Y.))  Hodge did not file objections to Magistrate Judge Dolinger's decision.

Magistrate Judge Dolinger denied Hodge's repeated requests to add another prison doctor as a defendant, and after ruling on a number of discovery disputes, ordered discovery to conclude by December 30, 2008.  In a letter dated November 12, 2008, Hodge once again requested leave to amend the complaint, this time to include additional allegations against Dr. Perilli.  Magistrate Judge Dolinger directed Hodge to submit a proposed amended complaint, which he did on November 25, 2008.  In his proposed amended complaint dated October 17, 2008, Hodge significantly expanded the scope of his Eighth Amendment claim against Dr. Perilli, increased the ad damnum clause from $500,000 to $850,000 and added a request for injunctive relief.

In a memorandum and order dated December 30, 2008, Magistrate Judge Dolinger denied Hodge's request to amend the complaint to include additional allegations against Dr. Perilli, but granted Hodge leave to increase the ad damnum clause and add a prayer for injunctive relief.  (Memorandum and Order dated 12/30/2008 at 9.)  From the outset of this litigation, Hodge has alleged that Defendants violated his Eighth Amendment rights by denying him a second mattress while he was incarcerated at Sing Sing from 2000 through 2003.  (Id. at 4.)  As Magistrate Judge Dolinger explained, the proposed amended complaint alleges that at various times through Hodge's stay at Sing Sing, Dr. Perilli failed to provide him with prompt and adequate medical care for his back.  For example, Hodge alleges that Dr. Perilli neglected to send him to an outside consultant in a timely manner, and that the specific treatments Dr. Perilli ordered for his

back were inadequate.  The intent of Hodge's new allegations, according to Magistrate

Judge Dolinger, was to provide the basis for a separate, or substantially enlarged, Eighth

Amendment deliberate indifference claim.   (Id.)

Magistrate Judge Dolinger concluded that Hodge's new allegations, which

address his treatment from 1996 through 2002, are time-barred by the three-year statute

of limitations applicable to § 1983 claims, and that amendment would therefore be futile.

(Id. at 5-7.)  Magistrate Judge Dolinger also held that Hodge's undue delay in moving to

amend provided an independent basis for denying the motion.  (Id. at 7-8.)  At the time he

moved to amend, Hodge had already been deposed, and defense counsel did not inquire

into his treatment history prior to 2003.  Magistrate Judge Dolinger explained that if

Hodge were allowed to pursue his recently revised (or newly minted) Eighth Amendment

claim, Defendants would be required to re-depose Hodge, and that the latest extended

discovery deadline would have to be extended yet again.  This would delay final

adjudication of the case, and inure to the detriment of Defendants and the Court.  (Id. at

8.)

On January 8, 2009, Hodge submitted timely objections to Magistrate Judge

Dolinger's December 30, 2008 memorandum and order.  (Objections 1/8/2009.)  In his

objections, Hodge argues that the new allegations in the proposed amended complaint

merely "clarify" allegations made in the original complaint, and that he will be prejudiced

by Magistrate Judge Dolinger's denial of the motion to amend.  (Id. ¶ 1-8.)  Hodge

contends that his new allegations are not time-barred because Dr. Perilli subjected him to

a "continuing wrong."  (Id. ¶ 6.)  Since Hodge is "an untutored Pro Se litigant," he claims

Magistrate Judge Dolinger should have allowed him to amend the complaint nearly three

years after the commencement of this action and one month before the end of a repeatedly extended discovery period.  (Id. ¶ 9.)

Although the Second Circuit has not expressly held whether motions to amend the complaint are "dispositive" or "nondispositive" for purposes of Rule 72 of the Federal Rules of Civil Procedure, the Court has suggested that such motions are "nondispositive" and therefore district courts should apply Rule 72(a)'s "clearly erroneous" or "contrary to law" standard to a magistrate judge's decision denying leave to amend.  See Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007) ("As a matter of case management, a district judge may refer nondispositive motions, such as a motion to amend the complaint, to a magistrate judge without the parties' consent." (citing 28 U.S.C. § 636; Fed. R. Civ. P. 72(a).)  Moreover, "[t]he weight of opinion appears to favor treating such rulings as nondispositive, requiring a 'clearly erroneous' standard of review."  Sokol Holdings, Inc. v. BMB Munai, Inc., No. 05 cv 3749(KMW)(DCF), 2009 WL 3467756, at *4 (S.D.N.Y. Oct. 28, 2009) (collecting cases); Bridgeport Music, Inc. v. Univ. Music Group, Inc., 428 F.R.D. 408, 410 (S.D.N.Y. 2008).  This court is of the view that a magistrate judge's decision on a motion to amend is nondispositive, and that clear error review under Rule 72(a) is appropriate.  See Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(a).

Regardless of whether Hodge's new allegations could support a timely Eighth Amendment claim under the "continuing violation doctrine," Schomo v. City of New York, 579 F.3d 176, at 182 (2d Cir. 2009), Magistrate Judge Dolinger's decision to deny leave to amend based on the prejudice to Defendants and the Court was not clearly erroneous.  Pro se or not, Hodge's attempt to present Defendants with a moving target and change course three-years into the litigation cannot be countenanced.  Since Hodge

has not shown that Magistrate Judge Dolinger's decision denying leaving to amend was clearly erroneous or contrary to law, his objections are overruled and the memorandum opinion and order, dated December 30, 2008, is affirmed.  <u>See</u> Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(a).

## II. Facts[2]

Hodge was in DOCS custody when he first injured his back in 1987.  He currently suffers from "Chronic Degenerative Disc Disease . . . a recurring, non fatal disease related to lifestyle and certain occupations."  (Perilli Decl. ¶ 7.)  The condition is common, "and aside from occasional periods of exacerbation or flare-ups, usually does not cause much pain or discomfort."  (<u>Id.</u>)  Beginning in 1992, Hodge was issued medical permits allowing him to use two mattresses to relieve his back pain and help him sleep. Medical permits are issued on a short-term basis, for up to one month, or on a long-term basis, for up to three months, and renewal of a permit requires revaluation of the inmate's medical condition.

Hodge was transferred from Attica Correctional Facility to Sing Sing in June, 1999.  Sing Sing issued Hodge a two-month medical permit for a second mattress in September, 1999, and the permit was renewed for additional two months in November, 1999.  In December, 1999, Dr. Perilli took over as Sing Sing's Facility Health Services Director, and he renewed Hodge's permit for a second mattress in February and May, 2000.  Dr. Perilli explains, however, that he renewed Hodge's permit before familiarizing himself with Sing Sing's policies – which provide for one mattress per inmate – and Hodge's medical history.  (Perilli Decl. ¶¶ 12, 20.)

---

[2] Unless otherwise noted, the facts are taken from the R&R.

Dr. Perilli denied Hodge's request to renew his permit for a second mattress in July, 2000.  According to Dr. Perilli, he did so because "the prescription of a second mattress as therapy for Chronic Degenerative Disease is not consistent with recognized standards of medical practice in this country."  (Id. ¶ 8.)  In 24 years of practicing medicine, Dr. Perilli has "never heard of nor witnessed any competent physician advocating or prescribing a double mattress as therapy for Chronic Disease of the Spine." (Id. ¶ 9.)  Furthermore, mattresses are not benign items in the prison setting: "They make excellent barricades.  They can be set on fire, and they can be used to hide contraband and weapons."  (Id. ¶ 22.)  There are hundreds of inmates with chronic back pain at Sing Sing, and if Dr. Perilli authorized an extra mattress for one inmate, "other inmates would become aware of it, and thus it is possible that the other similarly situated inmates will ask for this accommodation."  (Id.)

Hodge challenged the denial of his request for a second mattress by filing grievances, complaining to medical staff and writing letters to Defendants.  But Hodge's complaints did not result in a second mattress, and so he commenced an Article 78 proceeding in New York State Supreme Court in May, 2001 seeking an order requiring Defendants to issue him a medical permit for a double mattress.   In a November 29, 2001 decision, the Honorable Joseph J. West explained that under New York State law "[a]n agency, while not generally bound by precedent, is obligated to explain and reconcile conflicting decisions rendered on essentially identical facts."  (State Decision 11/29/2001 at 4.)  Judge West found "Respondents' failure to set forth a basis for . . . [their] about face [regarding the second mattress] to be arbitrary and capricious to the point of being irrational," and ordered Defendants to provide Hodge with a second

mattress.  (Id. at 5.)  The learned judge noted, however, that "Respondent[s] may certainly deny [Hodge's] . . . application [for a second mattress] in the future, provided . . . [they] do[] so on the basis of a rational explanation reconciling such denial against past approval."  (Id.)

Defendants appealed Judge West's decision, but withdrew the appeal in July, 2002.  Having yet to receive a second mattress, Hodge wrote to Judge West seeking an order holding Defendants in contempt on September 12, 2002.  On September 23, 2002, Dr. Perilli wrote that Hodge would be issued a 30 day permit for a second mattress, but explained that the permit was "not [being] issued for medical reasons but for legal ones." (Ambulatory Health Record dated September 23, 2002, Hodge Decl., Ex. NN.)  A day later, Sing Sing's Superintendent sent Dr. Perilli a memo stating that DOCS legal counsel has instructed the facility to issue Hodge a permit for a second mattress.  The Superintendent explained, however, that Dr. Perilli should reevaluate Hodge's condition in 30 days, and rescind the permit if a second mattress was not medically necessary.

Hodge received a 30 day permit for a second mattress on September 24, 2002, but Dr. Perilli denied Hodge's request to renew the permit on October 25, 2002.  In denying Hodge's request, Dr. Perilli stated that an extra mattress is not an accepted form of treatment for Hodge's condition, and that prescribing an extra mattress would be inconsistent with Hodge's daily activities, which include mowing lawns.  Hodge responded, once again, by seeking an order from Judge West holding Defendants in contempt, and in an April 27, 2003 decision, Judge West noted that Defendants had "failed to honor the prior judgment of this court with alacrity," but denied Hodge's contempt motion.  (State Decision 4/27/2003 at 2.)  Judge West explained that although

his previous decision "left open the possibility of denial [of a second mattress] upon further examination, that did not serve to change the underlying rationale for the judgment, to wit, the failure to reconcile prior findings which served as basis for permitting Petitioner to have the extra mattress." (<u>Id.</u> at 3.) Judge West noted that Dr. Perilli's diagnosis of Hodge's back condition was the same as the other doctors who had prescribed a second mattress as a form of treatment. Since Dr. Perilli failed to reconcile his decision denying Hodge's request for a second mattress with the earlier doctors' decisions to prescribe a second mattress, Judge West directed Defendants to "issue [Hodge] his permit pending substantial and objective medical proof that [his] condition no longer requires the requested [accommodation]." (<u>Id.</u>)

In a grievance dated September 17, 2003, Hodge complained that he had not received a second mattress as ordered by Judge West. Sing Sing's Superintendent responded by claiming that Hodge had received a second mattress, but after a hearing the Inmate Grievance Resolution Committee concluded that "the grievant is going to be provided a second mattress." (Administrative Decision dated September 30, 2009, Reznik Decl., Ex. V.) In a memo to Hodge dated October 20, 2003, Dr. Perilli acknowledged Judge West's order and promised to provide "a comprehensive and rational Medical Treatment Plan to help you cope with your disability." (Memo from Dr. Perilli to Hodge dated October 20, 2003, Reznik Decl, Ex. W.) Dr. Perilli also wrote that "[i]n order to help alleviate and prevent recurrences of your lumbar pain, we are issuing you a Double Mattress, a Flats, a Bus, an Elevator and Bottom Bunk pass, as walking multiple levels of stairs and hilly terrain are known to stress your condition." (<u>Id.</u>)

10

Despite these assurances, Hodge maintains that he never received a double mattress permit before his transfer from Sing Sing in November, 2003.

Throughout his three years of incarceration at Sing Sing, Hodge was frequently examined by medical staff, including at least five examinations by Dr. Perilli.  One of Dr. Perilli's examinations took place when Hodge was in the infirmary for "an acute back pain flare up."  (Perilli Decl. ¶ 45.)  As treatment, Dr. Perilli issued Hodge a pass allowing him to stay on the first floor of the facility, and permitting him to remain in his cell on bed rest, which Dr. Perilli explains is "an approved therapy for an acute back pain flair up."  (Id. ¶ 45.)  During another examination, Dr. Perilli ordered x-rays of Hodge's back.  As a result of the x-rays, Hodge was referred for physical therapy; a treatment Hodge explained had helped alleviate his back pain in the past.  During his physical therapy appointments, Hodge received instructions on stretches, exercises, and bed positions he could use to alleviate his back pain.

## III. Governing Law and Magistrate Judge Dolinger's R&R

### A. Deliberate Indifference

Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  The "deliberate indifference standard embodies both an objective and subjective prong," Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996), and "not every lapse in medical care is a constitutional wrong."  Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006).   The prisoner "must prove that the alleged deprivation of medical treatment is, in objective terms, 'sufficiently serious' – that is, the prisoner must prove that his medical need was 'a condition of urgency, one that may produce death,

degeneration or extreme pain.'" Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005)

(quoting Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d Cir. 1998)).  The objective test

also "asks whether the inadequacy in medical care is sufficiently serious.  This inquiry

requires the court to examine how the offending conduct is inadequate and what harm, if

any, the inadequacy has caused or will likely cause the prisoner."  Salahuddin, 467 F.3d

at 280 (citing Helling v. McKinney, 509 U.S. 25, 32-33 (1993)).

        "Subjectively, the charged official must act with a sufficiently culpable state of

mind."  Hathaway, 99 F.3d at 553.  Mere negligence will not suffice, but deliberate

indifference entails "something less than acts or omissions for the very purpose of

causing harm or with knowledge that harm will result."  Farmer v. Brennan, 511 U.S.

825, 835 (1994).  To satisfy the subjective element, the prisoner must "prove that the

charge official 'knows of and disregards an excessive risk to inmate health or safety; the

official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference.'"  Johnson,

412 F.3d at 403 (quoting Farmer, 511 U.S. at 837).  "It is well-established that mere

disagreement over the proper treatment does not create a constitutional claim.  So long as

the treatment given is adequate, the fact that a prisoner might prefer a different treatment

does not give rise to an Eighth Amendment violation."  Chance v. Armstrong, 143 F.3d

698, 703 (2d Cir. 1998).

        Magistrate Judge Dolinger assumed without deciding that Hodge had shown the

existence of an objectively serious medical condition, (R&R at 10), but held that Hodge

failed to show that Defendants acted with deliberate indifference to his medical needs.

(Id. at 18-21.)  While Defendants denied Hodge his preferred course of treatment – a

second mattress – Magistrate Judge Dolinger explained that "[t]he fact plaintiff was regularly examined and treated for his back condition by the medical staff at Sing Sing, including by defendant Perilli, belies any claim of deliberate indifference to his medical needs." (Id. at 18-19.)  Magistrate Judge Dolinger observed that Dr. Perilli – who has practiced medicine as an internist for 24 years – testified that the use of multiple mattresses is not a recognized form of treatment for Hodge's back condition, and that Hodge failed to contradict Dr. Perilli's testimony with any competent evidence.  (Id. at 19.)  According to Magistrate Judge Dolinger, the fact that other prison doctors prescribed a double mattress as a form of treatment for Hodge's back condition does not establish that Dr. Perilli acted with deliberate indifference, because "a difference of opinion . . . among medical professionals . . . as to the appropriate course of medical treatment does not in and of itself amount to deliberate indifference." Williams v. M.C.C. Inst., 97 Civ. 5352(LAP), 1999 WL 197604, at *7 (S.D.N.Y. Mar. 21, 1999).  Furthermore, even if a double mattress were found to be a viable form of treatment for Hodge's back condition, in light of the other more generally accepted forms of treatment Hodge received for his back, no rational juror could conclude that Defendants acted with deliberate indifference.  (R&R at 20.)

According to Magistrate Judge Dolinger, Defendants' failure to comply in a timely fashion with Judge West's orders requiring them to provide Hodge with a second mattress does not establish that they acted with deliberate indifference to Hodge's medical needs.  (R&R at 20-21.)  The basis for Judge West's two orders was Defendants' failure to reconcile earlier decisions allowing the use of a second mattress with Dr. Perilli's denial of Hodge's requests for a second mattress.  Judge West ruled based on

state law requiring Defendants to "explain and reconcile conflicting decisions rendered on essentially identical facts." (State Decision 11/29/2001 at 4.)   Magistrate Judge Dolinger reasoned that "the administrative-law critiques of defendants' rationales for denying plaintiff's requests for a medical pass have no bearing on whether such denials represent deliberate indifference to plaintiff's medical needs."  (R&R at 21.)  Moreover, any delay in complying with Judge West's orders "at best represents contempt of the court, an argument that plaintiff pressed -- albeit unsuccessfully -- in state court."  (Id. at 21.)  Since no rational factfinder could conclude that Defendants were deliberately indifferent to Hodge's medical needs, Magistrate Judge Dolinger recommends granting Defendants' motion for summary judgment dismissing Hodge's Eighth Amendment claim.  (Id.)

**B. Retaliation**

Through his prolific motion practice, Hodge has apparently succeeded in creating a degree of uncertainty – at least in the minds of the Defendants – as to whether his purported First Amendment retaliation claim is still in the case.  Defendants address the claim in their motion papers, but as explained supra at 2-6, the claim was dismissed long ago and Hodge's belated attempts to resuscitate it have been denied.  Out of an abundance of caution, Magistrate Judge Dolinger nevertheless addressed Hodge's retaliation claim and found it to be utterly devoid of merit.  (R&R at 25-27.)

To establish "a *prima facie* case of First Amendment retaliation, a plaintiff must establish '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'"  Scott v. Coughlin, 344 F.3d 282,

287 (2d Cir. 2003) (quoting <u>Morales v. Mackalm</u>, 278 F.3d 126, 131 (2d Cir. 2002)).  In his proposed amended complaint dated September 21, 2007, Hodge alleged that he was falsely charged with disciplinary violations, and that the charges were relied upon by two non-parties as grounds for transferring him from Sing Sing.  Hodge surmised that the transfer was in retaliation for his lawsuit against Defendants.  But the only defendants in the case are Drs. Perilli and Wright, and Hodge does not allege that either of them took any retaliatory actions against him.  Magistrate Judge Dolinger accordingly held that "[a]bsent proof that a defendant took adverse action against him, plaintiff cannot succeed on his retaliation claim."  (R&R at 26.)  Thus, to the extent Hodge's retaliation claim "might be deemed to remain in the case," Magistrate Judge Dolinger recommends the Court grant Defendants summary judgment dismissing it.  (<u>Id.</u> at 27.)

**C. Rule 56(f) and Discovery Disputes**

After Defendants moved for summary judgment, Hodge sent Magistrate Judge Dolinger a number of letters complaining about Defendants' discovery responses. Magistrate Judge Dolinger construed the letters as a request for relief under Rule 56(f) of the Federal Rules of Civil Procedure.  (<u>Id.</u> at 27.)  Rule 56(f) provides: "[i]f a party opposing the [motion for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . deny the motion . . . order a continuance . . . [or] issue any just order."  Fed. R. Civ. P. 56(f). After thoroughly reviewing the documents Hodge claims Defendants failed to produce, Magistrate Judge concluded that Hodge had in fact received many of the documents, that other documents simply did not exist, and that others are immaterial.  (R&R at 29-33.)

Magistrate Judge Dolinger accordingly denied Hodge's request for Rule 56(f) relief.  (Id. at 33.)

Hodge asked Magistrate Judge Dolinger strike Defendants' affirmative defenses as a sanction for their failure to produce various documents during discovery.  He also moved to compel the production of certain computer-generated records relating to his medical history.  Since Magistrate Judge Dolinger recommends granting Defendants' motion for summary judgment and dismissing the complaint, he explained that these requests are moot. (Id. at 34, 44.)  Even if the Court disagreed with the recommendation, Magistrate Judge Dolinger held that Hodge is not entitled to sanctions, and that the motion to compel – which was filed after the motion for summary was fully briefed – failed to target the production of relevant materials.  (Id. at 34-47.)  The Court agrees.

## Discussion

### IV. Standard of Review

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  When a timely objection has been made to the recommendations of the magistrate judge, the court is obligated to review the contested issues de novo.  Hynes v. Squillace, 143 F.3d 653, 656 (2d Cir. 1998).  The Court may, however, "adopt those portions of the Report [and Recommendation] to which no objections have been made and which are not facially erroneous."  La Torres v. Walker, 216 F. Supp. 2d 157, 159 (S.D.N.Y 2000).

### V. Objections

The Court has reviewed Hodge's objections to the R&R and finds them to lack merit.  Consequently, the Court adopts Magistrate Judge Dolinger's R&R in its entirety.

16

**A. Time Barred**

As an initial matter, Hodge argues that Defendants motion for summary judgment should be "dismissed as being time barred." (Obj. ¶ 2.) Magistrate Judge Dolinger initially set March 16, 2009 as the deadline for filing motions for summary judgment, but Defendants did not file their motion until March 26, 2009. Magistrate Judge Dolinger, however, granted Defendants an extension until March 26, 2009 to file their motion, and so the motion was timely. (Endorsed Order dated March 10, 2009, Doc. # 56.) Despite evidence that he was served with Defendants' request for an extension, and Magistrate Judge Dolinger's order granting the request, Hodge claims he was not served with either. (Obj. ¶ 2.) He contends that as a result, "[a]ny motion papers dated past the March 16, 2009 dead -line [sic] should be considered time barred as a matter of law." (Obj. ¶ 2.) But even assuming Hodge was not served with the extension request or Magistrate Judge Dolinger's order, Hodge was not prejudiced – even in the slightest – by Defendants submission of the motion for summary judgment 10 days after the initial deadline. See N.Y. State Teamsters Conference Pension & Ret. Fund v. Seaway Motor Express, Inc., No. 89-CV-337, 1990 WL WL 43846, at *2 (N.D.N.Y. Apr. 11, 1990) (refusing the deny motion for summary judgment submitted 13 days after deadline since opposing party was not prejudiced by the delay). There are no grounds for denying Defendants' motion for summary judgment as untimely.

**B. Questions of Fact**

Hodge contends that Magistrate Judge Dolinger "in fact tried to resolve disputed issues of fact in making his Report and Recommendation, when the law says this cannot be done." (Obj. ¶ 4.) According to Hodge, Magistrate Judge Dolinger "ruled that

plaintiff was provided proper treatment when there are disputed material issue[s] of fact showing that plaintiff was not given such proper treatment." (Id.) In support, Hodge string cites – without any further explanation – to a host of documents he submitted in opposition to the motion for summary judgment. (Id.) Magistrate Judge Dolinger did not, however, rule that Defendants necessarily provided Hodge with "proper treatment." Instead, he concluded that based on the extensive treatment Hodge received – which included no less than 5 examinations by Dr. Perilli, x-rays of his back, and physical therapy – no reasonable juror could conclude that Defendants acted "with a sufficiently culpable state of mind." Hathaway, 99 F.3d at 553. Moreover, even if Defendants did not provide "proper treatment," it is well-settled that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

According to Hodge, the evidence shows that when his back condition was deteriorating, "defendant did nothing to try to correct the matter." (Obj. ¶ 6.) Hodge asserts that he "was ordered to return to the Orthopedic Surgeon for treatment and was never returned by defendant Perilli to receive treatment needed, i.e., an operation." (Id.) In support, Hodge cites to his unsworn declaration which states he was examined by an orthopedic surgeon in 2002 who ordered some undisclosed form of treatment and directed Hodge to return for a follow-up visit in two months. (Hodge Decl. ¶ 32.) According to the declaration, "[t]his Consultation to see the Orthopedic Surgeon was requested by Dr. Perilli himself. But Dr. Perilli did nothing to make sure treatment was followed, and plaintiff was properly returned for the follow up in two months as ordered, or see that this herniated disc problem was properly corrected for plaintiff." (Id.) But

even assuming Dr. Perilli failed to see that Hodge was returned to the orthopedic surgeon, this isolated incident is dwarfed by the overwhelming evidence that Dr. Perilli and others at Sing Sing regularly examined and treated Hodge's back condition.  At best, Dr. Perilli's failure – if any – to see that Hodge returned to the orthopedic surgeon is evidence of negligence, but it is a far cry from a showing that Dr. Perilli was deliberately indifferent to Hodge's medical needs.  Indeed, Hodge admits that it was Dr. Perilli who scheduled his visit to the orthopedic surgeon in the first place.[3]

## C. Collateral Estoppel

Invoking the doctrine of collateral estoppel, Hodge argues that Defendants are barred from relitigating various issues he claims were decided by the Judge West during the Article 78 proceeding.  (Obj. ¶¶ 8, 9, 33, 60-69.)  But while "collateral estoppel can be relied on as a bar in section 1983 actions to relitigating issues previously decided in an Article 78 proceeding," Fastag v. Kelly, No. 04 CIV 9037SAS, 2005 WL 1705529, at *4 n.40 (S.D.N.Y. July 19, 2005) (quoting Stubbs v. de Simone, No. 04 Civ. 5755, 2005 WL 1079286, at *10 (S.D.N.Y. May 9, 2005)), the doctrine does not apply to the facts of this case.  Under New York law, "collateral estoppel will apply only if '(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue

---

[3] Throughout his objections, Hodge summarily asserts that Dr. Perilli interrupted and delayed treatment prescribed by a "medical specialist."  (Obj. ¶¶ 41, 47, 49, 52, 54.)  It is unclear what treatment Hodge is referring to, but to the extent his assertions are yet another attempt to expand his Eighth Amendment claim beyond the denial of a second mattress, the attempt fails.  Hodge's untimely request to amend his complaint to add an Eighth Amendment claim based on anything other than Dr. Perilli's denial of second mattress permit has been denied.  See supra at 2-6.  Dr. Perilli's treatment (or alleged deficient treatment) of Hodge's back goes to whether Dr. Perilli acted with a sufficiently culpable mental state in denying Hodge's request for a second mattress; it is not the basis for a separate and distinct Eighth Amendment claim.  See id.

in the first proceeding.'"  Mocco v. N.Y. State Office of Court Admin., 95 F.3d 195, 200 (2d. Cir. 1996).

Hodge claims that as a result of Judge West's orders, Magistrate Judge Dolinger was required to conclude that Dr. Perilli was "wrong" is denying him a permit for a double mattress; that a double mattress is a viable form of treatment for his back condition; that there is no difference of opinion among doctors regarding the propriety of a double mattress as a form of treatment for his back condition; and (apparently) that Defendants acted with deliberate indifference to his serious medical needs by denying him a second mattress.  (Obj. ¶¶ ¶¶ 8, 9, 33, 60-69.)  None of these issues were, however, "actually and necessarily decided" by Judge West in the Article 78 proceeding.  Mocco, 95 F.3d at 200.  Judge West ruled based on Defendants failure to comply with their obligation under state administrative law "to explain and reconcile conflicting decisions rendered on essentially identical facts."  (State Decision 11/29/2001 at 4.)  Hodge prevailed because Defendants "fail[ed] to reconcile prior findings which served as basis for permitting Petitioner to have the extra mattress."  (State Decision 4/27/2003 at 3.)  The only issue "necessary" to Judge West's ruling was whether Defendants provided a sufficient explanation for denying Hodge a second mattress; Judge West did not decide – because he did not need to decide – the panoply of issues Hodge contends Defendants are collaterally estopped from relitigating.  See Plitz v. Vill. of Rockville Centre, No. CV 07-4078, 2008 WL 4326996, at * 6 (E.D.N.Y. Sept. 22, 2008) (issues raised in Article 78 proceeding not barred by collateral estoppel because "[w]hen the Article 78 court found in favor of [plaintiff], it did so on the sole ground that the decision to deny renewal [of a permit] lacked the required rational support in the record.  It was on this basis, and this

basis alone, that [plaintiff] prevailed.")  Hodge's reliance of the doctrine of collateral estoppel is misplaced.

## D. Fourteenth Amendment

Finally, Hodge asserts that Defendants violated his Fourteenth Amendment rights by failing to comply with Judge West's orders.  (Obj. ¶¶ 4, 70-73.)  Magistrate Judge Dolinger pointed out that Hodge alludes to a Fourteenth Amendment claim in his opposition to the motion for summary judgment, but explained that "any such claim raised for the first time in plaintiff's opposition papers would be untimely."  (R&R at 20 n.8.)  (Obj. ¶¶ 70-73.)  Hodge argues that Magistrate Judge Dolinger "noticed in 2007 [that] plaintiff raised a 14th Amendment claim," and therefore his purported claim is timely.  (Id. ¶ 73.)  Magistrate Judge Dolinger did not, however, "notice" that Hodge had raised a Fourteenth Amendment claim in 2007.  Rather, in a footnote to his Report and Recommendation dated June 22, 2007, Magistrate Judge Dolinger cited to cases discussing the substantive component of the Fourteenth Amendment's due process clause and noted "that a state-court order may play a larger role in section 1983 cases where defendant knew of the order and failed to abide by it."  (Report and Recommendation dated June 22, 2007 at 24 n.8.)  Magistrate Judge Dolinger did not even intimate that Hodge had asserted a Fourteenth Amendment claim; indeed, he explained that Hodge likely could not state a Fourteenth Amendment claim based on Defendants' failure to comply with Judge West's orders.  (Id.)  The first mention by Hodge of a Fourteenth Amendment claim based on Defendants' failure to comply with the state-court orders comes in his opposition to the motion for summary judgment, and the Court agrees with Magistrate Judge Dolinger that that claim is untimely.

But even if Hodge had asserted a timely Fourteenth Amendment claim, the claim

fails.  "Substantive due process standards are violated only by conduct that is so

outrageously arbitrary as to constitute a gross abuse of governmental authority."  Natale

v. Town of Ridgefield. 170 F3d 258, 263 (2d Cir. 1999).  To show a substantive due

process violation, the "plaintiff must: (1) identify the constitutional right at stake, and (2)

demonstrate that the government action was conscious shocking or arbitrary in the

constitutional sense."  Platt v. Vill. of Southampton, No. 08-CV-2953(JS)(ARL), 2009

WL 3076099, at *6 (E.D.N.Y. Sept. 21, 2009).  Courts have held that "[a] prison

official's knowing refusal to obey a state court order affecting a prisoner's rights would

make that official liable for infringing upon the inmate's personal liberty protected by the

substantive due process clause of the Fourteenth Amendment."  Johnson v. Coughlin, No.

90 Civ. 1731(SHS), 1997 WL 431065, at * 6 (S.D.N.Y. July 30, 1997) (internal quotation

marks omitted); see also Arce v. Miles, No. 85 Civ. 5810, 1991 WL 123952, at *9

(S.D.N.Y. June 28, 1991); Talisker v. Moore, 738 F. Supp. 1005, 1010 (S.D. W. Va.

1990).  Cases finding that prison officials violated a prisoner's substantive due process

rights by ignoring a state court order overwhelmingly involve orders directing the

prisoner's release from custody or release from a segregation unit.  See Cabassa v.

Gummerson, No. 9:01-CV-1039, 2008 WL 4416411, at *16-17 (N.D.N.Y. Sept. 24,

2008) (release from special housing unit); Johnson, 1997 WL 431065 at *6 (release from

special housing unit); Arce, 1991 WL 123952, at * 9-10 (release from segregation unit);

Huddleston v. Shirley, 787 F. Supp. 109, 110-111 (N.D. Miss. 1992) (release from "jail

during the day to go to work"); Tasker, 738 F. Supp. at 1013-14 (release from custody).

Judge West's orders directed Defendants to provide Hodge with a second mattress. While Hodge has a Fourteenth Amendment liberty interest in being free from Defendants' deliberate indifference to his serious medical needs, he does not have a liberty interest in a second mattress. As Magistrate Judge Dolinger correctly found, no rational juror could conclude that Defendants were deliberately indifferent to Hodge's medical needs. Since Hodge has no constitutionally protected liberty interest in a second mattress, even if Defendants knowingly ignored Judge West's orders Hodge's substantive due process rights were not violated and his claim fails. See Williams v. Chandler, No. 4:05CV00661-ERW, 2007 WL 1306451, at *5-6 (E.D. Mo. May 2, 2007) (prison officials did not violate prisoner's substantive due process rights by failing to comply with state court order directing officials to transport prisoner to doctor because prisoner "does not have a liberty interest in being transported to a private doctor outside of the Missouri Correctional Facility."); Bingham v. Sheahan, No. CV 07-8084-PTC-MHM(JRI), 2007 WL 3243843, at *4 (D. Ariz. Oct. 32, 2007) (dismissing prisoners substantive due process claim based on state court order directing prisoner's transfer to another facility "[b]ecause Plaintiff fails to allege the violation of a constitutional right with the alleged failure to comply with state court transport orders.").

### Conclusion

For the foregoing reasons, the Court accepts and adopts the Report and Recommendation as its opinion. Defendants' motion for summary judgment is GRANTED and the case is DISMISSED. The case is frivolous and has burdened the scarce resources of this Court for too long. Any appeal from this Order would also waste the Second Circuit's scarce resources as well. Pursuant to 28 U.S.C. § 1915(a), an appeal

would not be taken in good faith.   The Clerk of Court is directed to enter judgment

accordingly.

Dated: New York, New York
      September 30, 2010

SO ORDERED

PAUL A. CROTTY
United States District Judge

Copies Mailed To:

Martin Hodge
(#86-A-8851)
Sullivan Correctional
325 River Side Dr.
P.O. Box 116
Fallsburg, NY 12733

Inna Reznik, Esq.
New York State Department of Law
120 Broadway (24th Floor)
New York, New York  10271